Seawell, J.
It seems to me that this case lies within a narrow compass; and that the whole question settles down into this enquiry ; whether the husband by the deed to Kean, completely and in due form executed this Power ? If he did, there is an end to the wife’s power; if he did not, she is entitled to appoint. The present controversy is between pure volunteers without any kind of consider-: *295 átlon on either side ; and the wife is entitled, unless there has been, not only an intention to appoint, but an actual appointment, and that in the precise form required by the Power. This provision is proven by many authorities, Dormer v. Thurland in 2 P. Williams, Ross v. Ewen, in 3 Atk. Darlington v. Pulteney in Cowp; Powell on Powers, 150, 163, and many others there cited are directly to that point.
This make it necessary to enquire in what manner Blount% the donor of this Power, declared it should be exercised so as to defeat the right of the wife; he requires it should be by deed executed in the presence of witnesses, and that by this deed Haslen, the husband, should limit and appoint to whom Kean should convey, provided such person should be qualified to take, hold, and transfer lands in North-Carolina ; then the first question is, has he husband appointed, and in the manner prescribed ? that brings us to the deed by the husband to Kean. Does that appoint to whom Kean shall convey? No, it authorises Kean to convey to whom he pleases in his discretion. This is a confidence which Blount did not think proper to confer on Kean, nor does he vest Haslen with such a Power. It may be said, however, that Haslen took a beneficial interest under the Power; for, as he might appoint whom he pleased, he could consequently appoint himself. That will depend upon a fact which does not appear in this case, namely, whether he was qualified to take, hold and transfer land, in North-Carolina; if he was, then he hada beneficial interest} but it is indrspensible for those who claim the execution of the power, to shew every circumstance' necessary therefor.
But assiiniing it as á fact that the husband was qualified and could appoint himself, and that having a beneficial intérest, could delégate this power, has Haslen exercised it? He' has not. But :Ken it is said, having alrea *296 dy the legal estate, with Haslen's power, he might appoint himself. Does Haslen’s deed say so ? It only -authorizes him to bargain, sell, alien and convey to any persons in his discretion, who should be qualified to take, hold and transfer lands in North-Carolina : in substance, the deed is, that Hasten authorises him to sell to any person, being, as the deed declares, “ about to take a voyage to South America,” when, as the purchaser was to be looked for, it was not in the nature of things that Hasten could be present to appoint him. And though Hasten declares in the deed that he transfers that authority in execution of the power, it is only by reference to his power, and is tantamount to saying “ in virtue of his power.” It seems to me utterly impossible to read this deed, and collect any thing like the remotest intention in Hasten to effect any other object than a bare substitution. There is nothing in the deed which even implies that Hasten had surrendered or released to Kean the right of appointing ; nor can I think there was any thing in the deed which prevented Hasten from revoking it the next moment. The substitute then must necessarily stand in the shoes of his principal, and until he had bargained, and sold the lands, as he was intrusted in his discretion to do, the power of the wife remained undefeated. To consider this deed as an execution of the power, and consequently a destruction of the power limited to the wife, could only be by a presumption very far-fetched; which I think we are not warranted in doing, in favor of a stranger and pure volunteer ; especially, when, by so doing, we are defeating the wife, who was an object of the donor’s bounty. I say the donor's, for if it was the husband's bounty, she has still a stronger claim. And according to the light I have considered this case in, it seems to me that no release, or other act of the husband, save the appointment, either by himself or substitute, (if he had a right to delegate his power) could defeat the power of the wife ; though he might expressly have declared it in the extinction of *297 the wife’s power; when I say “ appointment” I wish to be understood that in favor of purchasers, courts of equity on account of the consideration, will effectuate them,* wherever defective, and will consider as done, what the parties have agreed to do ; but it comes to the same thing at last, and is an appointment in equity.
The result of the whole seems to be, that by this deed, if it operated at all, the power of the wile was placed at the mercy of Kean, instead of the husband ; and that thereby he acquired the power, and nothing more, of defeating by his own act the claint of the wife, which before he could not; but that in both cases it required the exercise of this power. The consequence is, that the wife having become qualified to take, hold and transfer lands in North-Carolina, and having appointed herself, the heirs of Kean, who hold the legal estate, must convey to her. This case has been a subject of tedious litigation, and I have bestowed upon it all the attention which my time and situation would admit of; and it very possibly may be, that through my errors and those of my brethren, who think with me, injustice is done the defendants by this determination ; and I ought the more to distrust my own opinion, as it is not in accordance with that of one older in the profession than mvself: but being placed here for the purpose of deciding, it is my duty to do so in the best manner I am able. Many points were made in this case upon the difference in powers and the effect of a release ; but from the view I have taken of it, they have become unnecessary to be examined, considering the manifest intention of the deed, to be only a substitution, of power. But if it were necessary, I should hold, that as those who claim an execution of the power must shew it, they must, pf consequence, shew themselves qualified to be appointed. Aliens can take, so can they transfer, but they cannot hold lands; that, therefore, it does not appear the husband had any beneficial interest; if he liad not, that it *298 was then a in ere personal confidence, which could apt be delegated. And as to a release, that of course would haVe no effect if he had no interest to give up: but even if he had an interest, as the power of the wife was limited to her by the original donor, to be exercised in default Of the appointment of the husband, that both being strangers, and upon an equal footing, the husband, by a release, could only relinquish to the legal owner what he had, and that the only effect would be, to lop off one power, in like manner as if it was spent by death ; for Blount, who created both powers, and who, as the case appears, is to be considered the benefactor of both, has appointed Kean to hold the estate, subject to the appointment of the wife, in default of any appointment by the husband ; and as the release could only destroy what the husband had, as between volunteers ; it consequently gave Kean nothing but a dead power; it gave him no ground in equity to oppose the wife’s claim ; for that must be founded either in regular title, according to the prescribed form ; or it must be founded upon moral obligation, which in equity dispenses with form. So long, therefore, as Kean continued to hold the lands, without any appointment being made by the husbandj does the power of the wife remain alive. ‘
I readily admjt the execution of a power limited tq ptrangers, is to be fairly construed, and this 1 understand the books to mean when they say “ liberally” construed, and that they are to be supported if there appears an i?ir Sentían, and the manner employed is within the fair and liberal exposition of that prescribed by the donor; and had the husband clearly evinced such intension by limit* jjng in this deed that Kean should have, hold and enjoy th£ «state, or words to that effect, that such appointment would have been sufficiently formal, and would have en. abled him to have resisted the wife’s power. But that* .■according to the clear design of the parties, he stood \ix *299 CO other condition than one with a general power of attorney to sell the lands in question to any person in his discretion, except such as could not hold them according ,tp the laws of North-Carolina.
Ruffin, J, and Daniel, J. concurred.
Hall, J.
It is said in Powell on Powers, page ¾ 4‘That Powers simply collateral, are when a person is invested with/a capacity of disposing of an interest in, or of destroying an interest in uses and trusts, in which he hath not, nor ever had any estate, first of creating such estate, as where cestui que use devised that hjs feoffees should sell his' lands and died. Here the power to sell was merely collateral to the right of the land, for the feoffees take thereby no interest in the land, but are barely empowered to sell.”
“ Secondly, of destroying such estates, as if there be a feoffment in fee by A, to divers uses, with power that if B shall revoke them, the uses shall cease, for B has no interest in the estate subjected to his power, eor can gain any by revoking or not revoking.” For this he cites Albany's case* and Digges' case†—The same doctrine is recognised in other books, and the same authorities relied upon, and it is said that a bare fine, feoffment or common recovery will not destroy or extinguish them—But thqt Powers appendant, or Powers In gross, may be destroyed jn either of those ways-
The argument of the Plaintiff’s counsel has thrown Ifas-len's Power of appointment in the first class of Powers, and takes it for granted that he has not exercised it by his deed to Kean, and that consequently that deed cannot be considered as a release of it, or as affecting it in any respect whatever. The correctness of the principle laid down by Mr. Powell may be admited—But it cannot be admited that Haslen’s Power of appointment, resembles either of the instances of collateral naked powers by him *300 set forth in the passage above recited—Hargrave Sn his notes on Co. Lit.* says, that by a general power of appointment is understood that kind of power which enables the party to appoint the estate to any person he thinks proper, and in this sense it is opposed to a particular or qualified* power, which enables the party to appoint to, or among particular objects only.—A general power enables the party to vest the whole fee in himself or any other person ; in fact therefore, giving the person such a power, is nearly the same, as giving the absolute fee, the only difftrence is, that it enables him to*do thro’ the medium of a seisin previously created, that, which if the fee had been actually limited to him, he might do by a conveyance of the land itself—so thatj in both cases his power of alienation is of the same extent.
Again, where there is a general power given to a person for such uses as he shall appoint, this giAs him such a dominion over it, as will subject it to his debts.† In this Case could not the creditors of Hasten. it he had any, ■ ■ j i have subjected these lands to their debts ?
It is stated in Co. Lit.‡ “ That if he that hath the power of revocation hath no present interest in the land, nor by the ceasor of the estate, shall have nothing, then his feoffment or fine, &c, of the land is no extingushment of his power, because it is merely collateral to the land.”
Can it be said, that upon the ceasor of the estate ⅛ Kean, Hasten may not have an interest, in whom there is a general power to direct its course, either to himself or any other person he may think proper. As to powers, merely collateral, there is a very good reason given why they should not be destroyed or extinguished, &c. because says Hargrave,§ “ collateral powers, are not in the nature of rights or tides, and cannot from their nature be releas-ec'L—t^at wfien powers are given or reserved to any person, having any estate or interest either present or future in the land, tfie exercise of these powers is consi *301 dered as advantageous to him, and there is no reason why he shou‘d not be allowed to depart with, or exclude himself from the benefit of them. But when they are given to strangers, they are intended for the benefit of some third person, and therefore the extinction of them is supposed to be injurious to some person intended to be benefited by them.” In this case, who can be injured by jUasleri’s transferring his interest in either of the ways, before specified ? there are no third persons, as in the case of particular or qualified powers, that can sustain any injury—as for instance, where the power of appointment is directed to be exercised in favor of the children of a particular marriage, or particular specified friends of the person creating the powers. It vvould therefore seem, that Hablen might transfer his interest under the power vested in him ; for an interest he certainly had—-and the deed f >m him to Kean, if it was not a strictly regular exercise of the power vested in him, ought to be considered as valid and operating in some other way.
But it said that the deed to Kean operated as a delegation of power, and that it is a maxim, that u Delegatus non potest delegare for this is cited, 2 Atk, 88. It will be seen that that was the case of a particular qualified power, to be exercised in favor of particular persons, to wit, children of a particular marriage, where there was a personal confidence and trust reposed* But, it can have no analogy to the exercise of a general power, where there is neither confidence or trust in favor of third persons. But laying these considerations aside, I am of opinion that if there has not been a technical and formal exercise of the power of appointment by the deed from Has en to Kean, by Haslen, there has been at least a substantial one—He states in that deed, that he is acting in conformity to the power of appointment vested in him by the deed from Blount to Kean, and then directs, limits and appoints, that the lands shall be conveyed &c. by the said Kean at his discretion to any person qualified to hold, *302 acquire and transfer lands. If then he had power to cotí-vey at pleasure to any person he chose, could he not elect hold the lands himself. Suppose he had conveyed to some third person, toiild Haslen, in the face of his own deed, compel the purchaser to give up the lands ? The effect of the deed to Kean from Haslen will not depend upon the after conduct of Kean, whether he conveyed or not—¿-If lands are devised to one “ to give or to sell.”1 These latter words shew the devisor’s intention that a fee shall pass; had they not been added, only a life estate would have vested in the devisee.* In this case the Ie* gai estate was in Kean, and being there, and he being au-thorised by Haslen to sell to whom he pleased, I think compleated his estate. But it is said, that if Has ¡ell’s deed to Kean had any effect, it could only be during the life of Haslen, that after his death, the power of appointment survived to Mrs. Haslen. I think that that poweir was only intended to vest in her, in case her husband did not exercise it at all; but, if he has properly exercised the power of appointment, he has done it in totot

1 Co. 9.

 1 Co. 174.

 271, B. note 231.

 3 Atk 656. 1 Atk. 465—2 Atk. 172—2 Ves 10.

 237, A.

 Co Lit 342, Note 298, Referring to Co. Lit. 265.

 Co. Lit 9, B. Was. Rep. 265, Wythe's Rep. 6, 88